**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOLOMON FELDMAN, Individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APOLLO GLOBAL MANAGEMENT, INC., MARC ROWAN, and LEON BLACK,<br><br>Defendants. | **Case No. 1:26-cv-01692-ALC** |
| RICHARD PEREZ, Individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APOLLO GLOBAL MANAGEMENT, INC., MARC ROWAN, and LEON BLACK,<br><br>Defendants. | **Case No. 1:26-cv-03550** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI'S
MOTION FOR CONSOLIDATION OF RELATED ACTIONS,
APPOINTMENT AS LEAD PLAINTIFF,
AND APPROVAL OF SELECTION OF LEAD COUNSEL, AND
<u>IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTION</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT ................................................................................................................. 4

        A.   MSPERS' Certification is Accurate and Complete ........................................... 4

             1.   MSPERS' Certification Lists All of its Class Period Transactions in the Securities that Are the Subject of the Complaints ................................................. 4

             2.   MSPERS' Certification Identifies Every Action in Which MSPERS Sought Appointment Within the Three Preceding Years ...................................................... 7

        B.   MSPERS Fully Complies With the 5-in-3 Rule ................................................. 8

III.    CONCLUSION ............................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s):**

*Belmont Holdings Corp. v. SunTrust Banks, Inc.*,
   896 F. Supp. 2d 1210 (N.D. Ga. 2012) ...................................................................... 7

*City of Livonia Employees' Ret. Sys. v. The Boeing Co.*,
   2011 WL 824604 (N.D. Ill. Mar. 7, 2011) ................................................................ 7

*City of Pontiac Gen. Employees' Ret. Sys. v. Stryker Corp.*,
   2011 WL 13228127 (W.D. Mich. Jan. 3, 2011) ......................................................... 9

*Cohen v. Luckin Coffee Inc.*,
   2020 WL 3127808 (S.D.N.Y. June 12, 2020) .................................................... 3, 8, 9

*In re Countrywide Fin. Corp. Sec. Litig.*,
   273 F.R.D. 586 (C.D. Cal. 2009) ............................................................................ 10

*In re Facebook, Inc. Sec. Litig.*,
   No. 5:18-cv-01725 (N.D. Cal. Aug. 3, 2018) ............................................................ 1

*In re Star Gas Sec. Litig.*,
   745 F. Supp. 2d 26 (D. Conn. 2010) ......................................................................... 7

*In re Vicuron Pharms., Inc. Sec. Litig.*,
   225 F.R.D. 508 (E.D. Pa. 2004) ................................................................................ 9

*Iron Workers Loc. No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*,
   616 F. Supp. 2d 461 (S.D.N.Y. 2009) ...................................................................... 9

*Long v. Stellantis N.V.*,
   2024 WL 5247284 (S.D.N.Y. Dec. 30, 2024) ........................................................... 9

*Shenk v. Mallinckrodt PLC*,
   300 F. Supp. 3d 279 (D.D.C. 2018) .......................................................................... 9

*Westchester Putnam Cntys. Heavy & Hwy. Laborers Loc. 60 Benefit Fund v. Atkore Inc.*,
   No. 1:25-cv-01851 (N.D. Ill. Apr. 23, 2025) ............................................................ 1

**Rules**

17 C.F.R. § 230.144A (2020) ........................................................................................ 6

**Statutes**

15 U.S.C. § 78u-4(a)(2)(A)(iv) ............................................................................. 2, 3, 4

15 U.S.C. § 78u-4(a)(2)(A)(v) ................................................................................. 4, 7

15 U.S.C. § 78u-4(a)(3)(B)(vi) ............................................................................ 3, 8, 9

**Miscellaneous**

Andrew Oxford, *Firms with state business among AG's key donors*,
   SANTE FE NEW MEXICAN (April 16, 2017) .............................................................. 10

Chris Tobe, *The Apollo/Epstein Files: Why Public Pensions Should Reopen the 2019 Divestment Debate*, THE COMMONSENSE 401K PROJECT (Feb. 5, 2026, updated Mar. 9, 2026),

https://commonsense401kproject.com/2026/02/05/the-apollo-epstein-files-why-public-pensions-should-reopen-the-2019-divestment-debate/ ................................................................ 5

## I.    INTRODUCTION

The United Teamster Pension Fund-A ("UTPF") and the Insulators and Allied Workers National Pension Fund ("IAWNPF") (together "UTPF-IAWNPF Group" or "Group") has filed an opposition to Public Employees' Retirement System of Mississippi's ("MSPERS") Lead Plaintiff Motion. It appears that the Group and its counsel, Robbins Geller Rudman & Dowd ("RGRD"), are prepared to say or do nearly anything they believe could somehow better their chances of appointment in this important securities fraud case, despite the fact that presumptive lead plaintiff MSPERS' losses are vastly larger than the Group's and MSPERS is plainly adequate. Recognizing they could not secure the lead alone, RGRD Partner Darren Robbins promptly called KSF Partner Lewis Kahn to propose that MSPERS and KSF partner with RGRD and the Group, stating "Mississippi has no problem working with us." *See* Second Supplemental Declaration of Kim Miller in Further Support of MSPERS' Motion ("Decl."), at Exhibit A, ¶ 5.[1] Shortly after MSPERS and KSF declined, Robbins sent an email asserting MSPERS' continued investment in "Apollo-sponsored vehicles" subjected it to unique defenses. ECF No. 26-2 at 2. While MSPERS and KSF could not fully decipher the cryptic email, having now received the Group's opposition to its Motion, MSPERS realizes it was nothing more than pretext for RGRD's baseless attacks.

MSPERS is a defined benefit pension fund that administers retirement benefits on behalf of 365,000+ members. *See* ECF No. 14-4 at ¶ 2. Those members include public educators, officers of the Mississippi Highway Safety Patrol, and other public employees. Courts within this District

---

[1] What makes the Group's arguments attacking MSPERS' adequacy so perplexing is the fact that its counsel, RGRD, ***currently represents Amalgamated Bank as co-lead plaintiff with MSPERS and Bernstein Litowitz Berger & Grossman LLP ("BLBG") in an ongoing securities fraud class action***. *See In re Facebook, Inc. Sec. Litig.*, No. 5:18-cv-01725, ECF No. 56 (N.D. Cal. Aug. 3, 2018) (granting stipulation to serve as co-lead plaintiffs and co-lead counsel). On at least one recent occasion, moreover, MSPERS has selected RGRD to act as co-lead counsel when seeking appointment as co-lead plaintiff. *See Westchester Putnam Cntys. Heavy & Hwy. Laborers Loc. 60 Benefit Fund v. Atkore Inc.*, No. 1:25-cv-01851, ECF No. 23 (N.D. Ill. Apr. 23, 2025).

and throughout the Country have routinely found MSPERS satisfies Rule 23's adequacy requirement. MSPERS has successfully represented classes of harmed investors for decades. Despite its stellar track record as a champion of investors' rights, the Group's opposition attacks MSPERS' adequacy.

The Group claims MSPERS should be disqualified because its Certification failed to identify "any of its Class Period purchases of Apollo securities other than common stock, in violation of 15 U.S.C. §78u-4(a)(2)(A)(iv)." ECF No. 25 (Group Opp. Br.) at 1. The Group misrepresents that both the *Feldman* and *Perez* Complaints "bring claims on behalf of all persons who purchased Apollo Global Management, Inc. **securities** during the Class Period." *Id.* at 4 (emphasis in original). Emphasizing the word "securities," the Group omits the key qualifier preceding it: Both Complaints bring claims on behalf of a Class who acquired "***publicly traded Apollo*** securities" during the Class Period. *Feldman*, ¶ 1; *Perez*, ¶ 1 (emphasis added). The two private equity funds in which the Group claims MSPERS holds limited partnership interests, "Apollo Fund VIII and Fund IX," **are by definition *not publicly traded*, nor are they securities issued by *Apollo Global Management, Inc*.** Likewise, none of the "four Apollo-affiliated debt holdings in MSPERS' externally-managed fixed income portfolios" are *Apollo securities*. ECF No. 25 at 8. As MSPERS' Certification correctly states, the only publicly traded Apollo security in which it transacted during the Class Period was Apollo Common Stock. *See* ECF No. 14-1.

Further, courts have almost universally rejected the argument that continued investment in defendant companies (let alone continued investment in entities tangentially related to a defendant company) presents a unique adequacy defense warranting disqualification as lead plaintiff. *See* ECF No. 24 at 8-9. Any investment by MSPERS' private equity managers in Apollo-sponsored private equity funds, or by its fixed income managers in "Apollo-affiliated debt holdings," is

2

irrelevant to the determination of MSPERS' financial interest in *these Actions*, as those investments are *not* the securities which "are the subject of" the *Feldman* and *Perez* Complaints. 15 U.S.C. § 78u-4(a)(2)(A)(iv).

Next, the Group's argument that MSPERS is statutorily barred from serving as Lead Plaintiff rests on two facially incorrect readings of the PSLRA's "professional plaintiff" rule, which provides that "a person may be a lead plaintiff…in no more than 5 securities class actions brought as plaintiff class actions…during any 3-year period." 15 U.S.C. § 78u-4(a)(3)(B)(vi). Importantly, the Group does not claim MSPERS failed to identify each of the federal securities class actions "filed during the three-year period preceding the date of [its] Certification" in which it had been appointed lead plaintiff. ECF No. 14-1 at ¶ 6. Instead, it wrongly argues "MSPERS' Certification already confirms it exceeds the cap," then quickly concedes "[i]ts appointment here would be the fifth." ECF No. 25 at 5. The rule expressly states a person may be a lead plaintiff "in *no **more** than* 5 securities class actions…during any 3-year period." 15 U.S.C. § 78u-4(a)(3)(B)(vi) (emphasis added). Elsewhere, the Group wrongly asserts "MSPERS' actual docket of ten ongoing matters where it serves as lead plaintiff already ***doubles*** the maximum the PSLRA presumptively allows." ECF No. 25 at 1. Judge Liman correctly rejected RGRD's previous attempt to advance the very same argument in *Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *7–8 (S.D.N.Y. June 12, 2020). Ironically, the Group's counsel has successfully argued at least twice that the rule does not apply to institutional investors. *See infra* at § II.B.

In sum, none of the Group's arguments are supported by fact or law. The Group has not rebutted the presumption in favor of MSPERS with any evidence whatsoever to prove inadequacy. MSPRS respectfully requests that the Court grant its Motion.

3

## II.    ARGUMENT

### A.    MSPERS' Certification is Accurate and Complete

The Group contends MSPERS' PSLRA Certification is "False and Incomplete" because it: (1) "does not disclose any of [MSPERS'] Class Period purchases of Apollo securities other than common stock"; and (2) "paints an inaccurate picture of MSPERS' lead plaintiff service." ECF No. 25 at 1, 4. Both contentions are untrue.

The PSLRA requires movants to submit sworn certifications which: (1) "set[] forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint"; and (2) "identif[y] any other action under this chapter, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class." 15 U.S.C. § 78u-4(a)(2)(A)(iv), (v).

### 1.    *MSPERS' Certification Lists All of its Class Period Transactions in the Securities that Are the Subject of the Complaints*

Both the *Feldman* and *Perez* Complaints allege Section 10(b) and 20(a) violations against Defendants on behalf of the same putative Class consisting of "persons or entities who purchased or otherwise acquired ***publicly traded Apollo [Global Management, Inc.]*** securities between May 10, 2021 and February 21, 2026, inclusive (the "Class Period")." *Feldman*, ¶ 1; *Perez*, ¶ 1 (emphasis added).[2] The Complaints then further clarify this putative Class comprises acquirers of Apollo "securities publicly traded on the NYSE during the Class Period…." *Feldman*, ¶ 49; *Perez*, ¶ 59. The only issuer named as a Defendant in either Complaint is "Apollo Global Management, Inc.," and all mentions of "Apollo" or "Apollo Global" refer to Apollo Global Management, Inc.

---

[2] The *Perez* Complaint filed by KSF also pleads Rule 10b-5(a) and (c) scheme allegations and Section 20A insider trading violations (¶¶ 75-84, 90-97), and alleges additional misstatements not pled in *Feldman* to ensure the Class is protected from repose arguments.

4

*See Feldman*, ¶¶ 7-8; *Perez*, ¶¶ 7-8.

MSPERS did not purchase or sell any publicly traded Apollo securities during the Class Period *other* than Apollo's Common Stock. In fact, Apollo only registered five different publicly traded securities during the alleged Class Period (including Common Stock). *See* Decl. at Exhibit B. Accordingly, MSPERS' Certification accurately sets forth all its Class Period transactions in Apollo securities that are the subject of the Complaints. *See* ECF No. 14-1 at 4.

Nevertheless, the Group argues MSPERS' Certification failed to disclose all required transactions because "reporting identifies MSPERS as a partner in two of Apollo's flagship private equity funds" and certain MSPERS investment committee materials identify "four Apollo-affiliated debt holdings in MSPERS' externally-managed fixed income portfolios." ECF No. 25 at 7-8.

First, *none* of the securities the Group accuses MSPERS of failing to identify in its Certification were issued by the sole corporate Defendant, Apollo Global Management, Inc. Second, the private equity fund interests and three of the four "Apollo-affiliated debt holdings" the Group identifies *were never publicly traded*. Finally, with respect to the sole *non-Apollo* note the Group identified that is publicly traded, it *does not trade on the NYSE*, but rather over-the-counter ("OTC").

Regarding the private equity funds, the Group asserts "public reporting identifies MSPERS as a partner in two of Apollo's flagship private equity funds." ECF No. 25 at 7. The cited article simply states "Mississippi has held Apollo VIII IX Private Equity funds." Chris Tobe, *The Apollo/Epstein Files: Why Public Pensions Should Reopen the 2019 Divestment Debate*, The CommonSense 401k Project (Feb. 5, 2026, updated Mar. 9, 2026), https://commonsense401kproject.com/2026/02/05/the-apollo-epstein-files-why-public-pensions-

should-reopen-the-2019-divestment-debate/. The Group and Tobe are presumably referring to Apollo Investment Fund VIII, L.P. and Apollo Investment Fund IX, L.P. (collectively, "Apollo PE Funds VIII and IX"). Apollo PE Funds VIII and IX are *not* Apollo securities, but instead Delaware limited partnerships with their own SEC CIKs[3] (0001580046 and 0001700635, respectively). Nor are the limited partnership interests in Apollo PE Funds VIII and IX "publicly traded." Rather, they were offered as private placements *years* prior to the start of the Class Period, with funding closing in 2013 and 2017, respectively, making purchases during the Class Period virtually impossible. *See* Decl. at Exhibits C-F.

With respect to the four "Apollo-affiliated debt holdings," **none** were issued by Apollo Global Management, Inc.—the sole issuer Defendant in this Action. Three of those four notes have never been publicly traded. *See* ECF No. 25 at 8 (Athene Global Funding's 5.34% Notes due January 15, 2027 were sold pursuant to "144A");[4] Decl. at Exhibits G, H, and I. The sole publicly traded note has never been listed on the NYSE and only trades OTC. *See Feldman*, ¶ 49; *Perez*, ¶ 59 (alleging Class of acquirers of Apollo "securities publicly *traded on the NYSE* during the Class Period") (emphasis added). The Group's assertion that MPSERS' Certification should have included transactions in these securities because the Class defined in the *Feldman* and *Perez* Complaints includes purchasers of the "publicly-traded debt of Apollo entities whose results form part of the constellation of entities that comprise Apollo" is wholly unsupported by the plain language of the *Feldman* and *Perez* Complaints. ECF No. 25 at 4. The Group cites nothing to support its overbroad definition of the Class (which, by their strained logic, could include the

---

[3] A CIK ("Central Index Key") is a unique, permanent 10-digit number assigned by the SEC to differentiate among filing entities.

[4] SEC Rule 144A, 17 C.F.R. § 230.144A, allows companies to sell unregistered securities in private placements to qualified institutional buyers.

purchasers of hundreds of different financial products Apollo and/or Apollo-related entities helped structure throughout the Class Period). The fact that the Group and RGRD falsely claim the Class includes securities never issued by the corporate Defendant demonstrates their inadequacy.[5]

> 2.    *MSPERS' Certification Identifies Every Action in Which MSPERS Sought Appointment Within the Three Preceding Years*

The Group argues MSPERS' Certification "paints an inaccurate picture of MSPERS' lead plaintiff service." ECF No. 25 at 4. Contrary to that assertion, 15 U.S.C. § 78u-4(a)(2)(A)(v) requires lead plaintiff movants to "identif[y] any other action under this chapter, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, which the plaintiff has sought to serve as a representative party on behalf of a class." In compliance with this requirement, MSPERS included a second list of cases at ¶ 7 of its Certification in which it sought appointment to serve as lead plaintiff but was not appointed. Together with the list at ¶ 6 (identifying cases in which it has been appointed as lead plaintiff within the past three years), the list at ¶ 7 satisfies MSPERS' obligation under 15 U.S.C. § 78u-4(a)(2)(A)(v).

To avoid any confusion, MSPERS went beyond the requirements of the PSLRA and identified in ¶ 8 two additional cases that were initially filed in 2023 but more than three years prior to the date of its Certification. The Group seizes on MSPERS' full transparency and claims this is a counterintuitive attempt by MSPERS to "understate[] the extent of [its] ongoing securities litigation commitments." ECF No. 25 at 6. Setting aside the fact that MSPERS' Certification

---

[5] Courts have found RGRD's conduct "troubling" where it has "carelessly—or cleverly" fabricated assertions. *See Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210, 1231-33 (N.D. Ga. 2012) (finding RGRD misrepresented a confidential witness's personal knowledge and that RGRD's "laundry list of excuses…is itself disturbing"); *see also City of Livonia Employees' Ret. Sys. v. The Boeing Co.*, 2011 WL 824604, at *5 (N.D. Ill. Mar. 7, 2011) (finding "[m]aterial facts concerning the confidential source's position and personal knowledge were misrepresented by [RGRD]") (vacated in part on other grounds); *In re Star Gas Sec. Litig.*, 745 F. Supp. 2d 26, 37-38 (D. Conn. 2010) (imposing Rule 11 monetary sanctions on RGRD for failing to conduct "a reasonable inquiry [into the] statements from [confidential witnesses]").

volunteered more information than required, not less, MSPERS is highly capable of overseeing this important securities action. MSPERS is assisted in supervising this and other securities class actions by the Office of the Attorney General of the State of Mississippi. MSPERS has abundant resources to assist and oversee KSF in this matter.

### B.     MSPERS Fully Complies With the 5-in-3 Rule

The PSLRA's rule against professional plaintiffs (the "5-in-3 rule") provides that "a person may be a lead plaintiff…in no more than 5 securities class actions brought as plaintiff class actions…during any 3-year period." 15 U.S.C. § 78u-4(a)(3)(B)(vi). MSPERS fully complies, having been appointed lead plaintiff in four federal securities class actions within the last three years. Appointment in this Action would be MSPERS' fifth.

Nevertheless, the Group asserts "MSPERS' actual docket of ten ongoing matters where it serves as lead plaintiff already ***doubles*** the maximum the PSLRA presumptively allows." ECF No. 25 at 1. Such a reading—where the 5-in-3 rule sets a limit on how many cases in which a person may concurrently *serve* as lead plaintiff—is not supported by the plain language of the statute. The court in *Cohen v. Luckin Coffee Inc.* expressly rejected RGRD's previous attempt to "read[] the word 'brought' expansively" to mean movants could *serve* in no more than five securities class actions during any three-year period. 2020 WL 3127808, at *7 (S.D.N.Y. June 12, 2020). The court correctly reasoned that such an expanded definition "divorce[d] the text from its natural meaning":

> It would make no sense for the statute to require plaintiffs to identify only actions *filed* in the past three years if the PSLRA really meant to exclude parties that served as lead plaintiffs in more than five cases that *were pending* in the past three-year time period. The only reasonable reading of the word "brought" is as a synonym for "filed."

*Id.* at *8. Further, courts within this District have not strictly applied the 5-in-3 rule to institutional investors, reasoning they are not the rule's intended subject, considering Congress's goal was to encourage institutional investors to serve as lead plaintiff. *See, e.g.*, *Long v. Stellantis N.V.*, 2024

WL 5247284, at *4 (S.D.N.Y. Dec. 30, 2024) ("Courts in this District, however, have consistently rejected the 5-in-3 rule argument advanced by Trapp, holding that Section 78u-4(a)(3)(B)(vi) does *not* bar appointment of an institutional investor simply because the investor has served as lead plaintiff in more than five cases over the past three years."); *Iron Workers Loc. No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 467 (S.D.N.Y. 2009) ("[A]s many courts have noted, the provision of the PSLRA restricting the use of professional plaintiffs was largely directed at private individuals, and courts have routinely waived the restriction in the case of qualified institutional investors.") (citing cases). Indeed, RGRD has previously, and successfully, argued the 5-in-3 rule should not apply to institutional investors. *See City of Pontiac Gen. Employees' Ret. Sys. v. Stryker Corp.*, 2011 WL 13228127, at *2 (W.D. Mich. Jan. 3, 2011) (exercising judicial discretion to not bar institutional investors under the 5-in-3 Rule "because courts have routinely concluded that this provision should not be strictly applied to institutional investors"); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 512 (E.D. Pa. 2004) (declining to bar institutional investor who served as lead plaintiff more than five times in the past three years).[6]

---

[6] Relegating its most scurrilous attack to two footnotes (*see* ECF No. 25 at 5, n.3 & 10, n.8), the Group implies—without a shred of "proof"—that publicly disclosed campaign contributions by KSF to the Mississippi Attorney General ("AG") undermine MSPERS' adequacy. RGRD has itself argued that such political contributions are a wholly proper "exercise [of] their right to donate to politicians who support their views." *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 604 (C.D. Cal. 2009); *see also* Decl. at Exhibit J, Andrew Oxford, *Firms with state business among AG's key donors*, SANTE FE NEW MEXICAN (April 16, 2017), (RGRD partner Paul Geller stating RGRD donated to the campaign of New Mexico AG Hector Balderas because he is "a proven public servant committed to fighting for the things I believe in and against the things most of us fight against—like corporate fraud and corruption"). The Group cites no case where a presumptive lead plaintiff movant was disqualified because of campaign contributions. *See Shenk v. Mallinckrodt PLC*, 300 F. Supp. 3d 279, 284 (D.D.C. 2018) ("The Court is unaware of any case concluding that either a putative lead plaintiff or a putative class representative failed to satisfy Rule 23's adequacy requirement based on a pay-to-play challenge.").

III.    CONCLUSION

MSPERS respectfully requests its Motion be granted.


DATED: May 28, 2026                                  Respectfully submitted,

                                                     **KAHN SWICK & FOTI, LLC**

                                                     */s/ Kim E. Miller*
                                                     Kim E. Miller (KM-6996)
                                                     250 Park Avenue, 7th Floor
                                                     New York, NY 10177
                                                     Telephone: (212) 696-3732
                                                     Facsimile: (504) 455-1498
                                                     Email: kim.miller@ksfcounsel.com

                                                     -and-

                                                     Lewis S. Kahn (*PHV to be submitted*)
                                                     Matthew P. Woodard (*PHV to be submitted*)
                                                     1100 Poydras Street, Suite 960
                                                     New Orleans, LA 70163
                                                     Telephone: (504) 455-1400
                                                     Email: lewis.kahn@ksfcounsel.com
                                                     Email: matthew.woodard@ksfcounsel.com

                                                     -and-

                                                     J. Ryan Lopatka (*PHV to be submitted*)
                                                     161 N. Clark Street, Suite 1700
                                                     Chicago, IL 60601
                                                     Telephone: (312) 759-9700
                                                     Email: j.lopatka@ksfcounsel.com

                                                     *Counsel for Lead Plaintiff Movant Public*
                                                     *Employees' Retirement System of Mississippi*
                                                     *and Proposed Lead Counsel for the Class*

10

## CERTIFICATE OF SERVICE AND COMPLIANCE

On May 28, 2026, the foregoing document was filed through the Court's CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Pursuant to L.R. 7.1(c), the undersigned counsel certifies that this memorandum of law contains 3,078 words, which complies with the word-count limitation.

/s/ Kim E. Miller
Kim E. Miller